## THE ADA M.

UNITED STATES v. 5,870 BAGS AND 100 KEGS, etc.

SAME v. BAY SHIPPERS, Limited.

District Court, S. D. New York.

Sept. 15, 1932.

George Z. Medalie, U. S. Dist. Atty., of New York City (Joseph F. Sharp, of New York City, of counsel), for the United States.

Wise, Whitney & Parker, of New York City (Francis C. Lothorp and Robt. E. Canfield, both of New York City, of counsel), for claimant.

FRANK J. COLEMAN, District Judge.

On April 1, 1930, shortly after midnight, the motor ship Ada M was found lying in the neighborhood of Ambrose Light Ship under circumstances which unquestionably indicate that she was engaged in the smuggling of her cargo of liquor. She was unanchored, but her engines were stopped and she showed no light whatever except the intermittent flashing of a white light. Her portholes were covered with some dark fabric manifestly as a precaution against being observed. Part of her large cargo of liquor had been removed in such a way as to leave the ship unseaworthy for a voyage, because what remained was in such an unsupported condition that any pitching of the boat would have caused it to fall.

There were strong indications that the portion of the cargo had only recently been removed. One hatch was open and the boat crew were apparently found standing in its neighborhood. Several fenders in the form of old automobile tires were over the side, and two or three speed boats had been detected in the neighborhood that night. Recent newspapers were found in her cabin indicating that there had been some contact with the land.

She was detected by the Commander of the Coast Guard Patrol boat C G 145, who, without objection, was permitted to board and to examine her papers. There is no question raised of illegal search. He took bearings and soundings and thereupon seized the Ada M and her cargo on the ground that she was within the twelve-mile limit and violated various sections of the Tariff Act of 1922 (42 Stat. 858).

The first and most serious question raised is whether she was within the twelve-mile limit. The Commander and the Second in Command of the C G 145 testified that at 1:15 a. m. and again at 3 a. m. they took bearings and soundings while alongside of the Ada M, and found on the first occasion that she was about nine miles from the Jersey shore and on the second occasion about eleven miles from it. They account for the difference between the two locations by the fact that there was a tidal current and also a light breeze in an easterly direction generally. The method of taking the bearings was to head the C G 145 directly at the Navasink and Ambrose lights successively and note on a piece of paper the compass bearings of these lights from the vessel. By plotting the two directions on a chart, the point of intersection indicated the location of the vessel and the distance from the shore could be measured. The soundings taken agreed in general with the markings on the chart at the locations plotted.

The testimony of these two members of the crew of the C G 145 did not impress me very favorably, and I would have little faith in the accuracy of their observations. Besides the minor contradictions, the methods employed as described by the witnesses did not seem to me to insure accuracy. Furthermore, the drift from the first location at 1:15 to the second at 3 a. m. did not seem to me probable, in view of the direction and strength of the current and wind. However, it would be improper to disregard the testimony, and in the absence of credible contradiction it must be accepted as true.

The only direct contradiction is in the deposition of Ritcey, captain of the Ada M, who, unquestionably, was a rumrunner. His description of the method by which he took bearings that night inspires less faith in his accuracy than that of the government's witnesses. Without reciting it in detail, it must suffice to find that the weight of the evidence is clearly on the side of the government.

The claimant of the Ada M concedes that she had no manifest such as required by the Tariff Act and that if she was seized within the twelve-mile limit the libel should be sustained provided she was at the time "bound to the United States." Under the ruling in The Marion Phillis (C. C. A.) 36 F. (2d) 688, she must be held to have been bound to the United States because the circumstances compel the inference that she intended to unload her cargo into boats which would smuggle it into the United States, whether the transhipment was to be made within or without the twelve-mile limit.

She was ostensibly bound from the port of Saint-Pierre to Nassau in the British West Indies and had lain for some time in the vicinity of New York, which was hundreds of miles off her alleged course. Furthermore, she had actually unloaded a large part of her cargo. While there is, of course, no direct evidence of a smuggling intention, no man of common sense could doubt it in view of all the circumstances.

The only other issue raised by the claimants is whether there was an unlawful unlading of merchandise within and an unlawful departure from the territory of the United States or a place within twelve miles of the coast. There was no permit to unload, and since she was found within the twelve-mile limit with a large part of her cargo gone under circumstances which require the inference that the unlading was a matter of recent occurrence, the issue must be decided against the claimant. The absence of direct evidence does not prevent a finding which all the circumstances plainly point to. The facts are stronger than in the case of U. S. v. The Francis T., affirmed (C. C. A.) 46 F. (2d) 1021, where a forfeiture was decreed.

The decree is therefore directed in favor of the libelant in each cause of action.

Settle decree on notice.